AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 18 2014

MATTHEW J. DYKMAN
CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 14 mj 1302 |
| | ) | |
| Peterson Yazzie | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 04/10-12/2014 in the county of San Juan County in the District of New Mexico, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 USC 113(a)(3)------------- | Assault with a Dangerous Weapon with the Intent to do Bodily Harm |
| Title 18 USC 2261A(2)(A)----------- | Stalking |
| Title 18 USC 1153------------------ | Crimes in Indian Country |

This criminal complaint is based on these facts:
See Attached Affidavit hereby incorporated by reference as if fully restated herein.

☒ Continued on the attached sheet.

*Complainant's signature*

Cary Cahoon, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 18, 2014

B Paul Briones
*Judge's signature*

City and state: Farmington, NM

B Paul Briones
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

State of NEW NEXICO
County of SAN JUAN

AFFIDAVIT

I, Cary Cahoon, being duly sworn, hereby depose and say:

1. I am a Special Agent (SA) with the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been employed as such since 1999. I am currently assigned to the Albuquerque Division of the FBI, Farmington Resident Agency, and have primary investigative responsibility in crimes that occur in Indian Country, including violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault. I am also responsible for investigating all other federal crimes for which the FBI investigates in the San Juan County area of New Mexico. The information set forth in this affidavit has been derived from an investigation conducted by affiant, Shiprock Criminal Investigators (CIs) Jerrick Curley and Jefferson Joe (Navajo Nation Department of Criminal Investigations), and/or communicated to me by other law enforcement officers.

2. Peterson Yazzie (Hereinafter Referenced as Yazzie), Age 34, has been in a common-law relationship with Victim 1 for many

years and the two of them have three children together. Throughout the majority of Yazzie and Victim 1's relationship, Yazzie has been verbally and physically abusive to Victim 1. During the past several months, Yazzie has become more abusive to Victim 1, enough so that Victim 1 decided to leave Yazzie and move out of the residence where they were both living. Since moving out approximately three weeks ago, Victim 1 has tried to hide from Yazzie for fear that he will hurt or kill her, particularly since she has begun seeing another man (Hereinafter referenced as Victim 2).

3. Because of Victim 1's concern for her own safety, she went to the Shiprock Family Court of the Navajo Nation on Thursday, April 10, 2014, and filed a temporary protection order against Yazzie. To date, Yazzie has not been served with said order. On April 17, 2014, said order was amended to include a request from Victim 1 that she get her kids back. At present, Victim 1's children are staying with Yazzie's mother. A hearing is scheduled for Thursday, April 24, 2014, at 1:00 p.m., for the purpose of extending the protection order, if warranted.

4. On Thursday, April 10, 2014, at approximately 8:00 p.m., Victim 1 and Victim 2 borrowed a GMC 250 truck registered to Victim 1's father and went to the Flowing Water Casino east of Shiprock, New Mexico. While there, Victim 1 and Victim 2 observed Yazzie and Yazzie's sister at the casino. Shortly after

seeing Yazzie and Yazzie's sister, Victim 1 asked Victim 2 if they could leave the casino, which they did. As Victim 1 and 2 were walking out of the casino, Victim 2 noticed that Yazzie was also leaving the casino. Victim 1 and 2 got into their vehicle and then observed Yazzie get into a black Dodge truck. Victim 1 observed that Yazzie was with her cousin, Lorenzo Thompson (Hereinafter referenced as Thompson). When the black Dodge truck departed the casino and traveled west on Highway 64 toward Shiprock, Victim 1 and 2 went the opposite direction, as they suspected Yazzie and Thompson would be stopped along the road waiting for them to drive by so they could then follow them and/or try and do something to them. Victim 1 and 2 traveled to Hogback, New Mexico, with Victim 2 driving. After arriving in the area of Hogback, they turned around and headed back to Shiprock. Upon their arrival in Shiprock, Victim 1 and 2 went to the Sonic Drive-In and then to Victim 2's house.

5. As Victim 1 and 2 turned off Highway 491 and onto the road going east to Victim 2's house, they observed a parked vehicle facing them with its high beam lights on. As Victim 1 and 2 drove toward the vehicle they recognized it as being the same black Dodge truck that was at the casino. Victim 1 observed Thompson in the driver's side of the vehicle, but did not see Yazzie. As Victim 1 and 2 drove by the truck they suddenly saw Yazzie standing in the middle of the road facing them and standing in a position like he was going to strike their vehicle

with something he was holding in his hands. When Victim 2 drove toward Yazzie and then around him, Yazzie struck their vehicle's windshield with what appeared to be a sledgehammer causing significant damage to the windshield. Because there was only one way in and out of the area where Victim 2 lived, and to avoid being blocked in by Yazzie, Victim 2 turned the vehicle around and headed west toward Highway 491. As they drove back toward Yazzie, Victim 2 sped up and drove directly at Yazzie in an effort to scare him. Yazzie moved out of the way as they got closer and then Yazzie swung the sledgehammer again striking the driver's side door of their vehicle. By this time, Victim 1 had contacted the police and told them what happened and then gave them their location. Victim 2 then pulled onto Highway 491 and parked the vehicle on the shoulder of Highway 491 under a street light until the police arrived. As Victim 1 and 2 waited there, the same black Dodge truck parked across the street, Yazzie exited the vehicle, and then began walking across the highway toward Victim 1 and 2 carrying the sledgehammer. Yazzie was yelling profanities at Victim 1 and 2 as he walked toward their vehicle. Traffic along the highway had to stop to avoid hitting Yazzie. Victim 2 then exited his vehicle and began yelling back at Yazzie. Before crossing the highway entirely Yazzie stopped in the road and then threw the sledgehammer at Victim 1 and 2's vehicle. Yazzie then ran back to the black truck, got in, and then left. A police officer stopped to assist Victim 1 and 2 and then transported them back to the police station to take their

statements. Officers pursued the black truck until the truck came to a dead end and the occupants of the vehicle jumped out and fled on foot. The occupants of the black truck were not captured or located.

6. During the afternoon of Saturday, April 12, 2014, Victim 1 was at her sister's house in Shiprock sleeping when she started to receive numerous phone calls on her cell phone. Victim 1 did not answer her phone because she was trying to sleep. At one point Victim 1 checked her phone and it showed the incoming calls were from a "Private" number. When Victim 1 listened to the voicemail messages that were left on her phone, they were all from Yazzie, which surprised her because she recently changed the number to avoid all contact with Yazzie. There were more than 20 separate voicemail messages from Yazzie, several of which were threatening in nature. Affiant listened to and recorded all of the messages with the verbal permission of Victim 1. In one of the messages Yazzie said something to the effect of, "I will put a bullet in your head." In another message Yazzie threatened to kill Victims 1 and 2. In one message Yazzie said something like, "I have a birthday present for you to put in your head." Because of the nature of said phone calls, Victim 1 and her mother went to Farmington later that day to have her phone number changed again.

7. After listening to the messages, Victim 1 called Victim

2 and told him about the aforementioned phone calls. Victim 2 then went to Victim 1's sister's house between 4:00 or 5:00 p.m., to eat soup and to be with Victim 1. While there, Yazzie called Victim 1's phone and Victim 2 answered it knowing it was Yazzie who was calling because it showed up as a "Private" number. Yazzie asked where Victim 1 and 2 were at because he was going to come over and shoot and kill both of them. Victim 2 told Yazzie to stop calling and then hung up the phone. Soon thereafter, Victim 2 took Victim 1 to her mother's house so they, Victim 1 and her mother, could go to Farmington to have Victim 1's phone number changed.

8. After Victim 2 dropped Victim 1 off at her mother's house, Victim 2 went to his cousin's house to help him with a few things. At approximately 8:00 p.m., on instant date, Victim 2 left his cousin's house and was driving north on Highway 491 south of the Shiprock bridge when he heard Yazzie yell his name. When Victim 2 looked around, he noticed Yazzie was on the passenger side of a Suzuki Hatchback SUV driving directly behind Victim 2's vehicle. Victim 2 noticed that Yazzie was wearing a Steeler's football cap. Victim 2 recognized the driver as someone he only knows as "Tony." Tony works at the Foutz Trading Post in Shiprock and fixes mountain bikes. Victim 2 continued across the bridge and onto Highway 491 traveling north toward Cortez, Colorado. Yazzie and Tony continued to follow him. Victim 2 sped up in an effort to try and lose them, but he was

unsuccessful. Eventually, Victim 2 turned off of Highway 491 onto a dirt road just outside of Shiprock. Victim 2 drove west down the dirt road approximately ¼ of a mile and then turned his vehicle around so it was facing east toward Highway 491. Victim 2 hoped he lost Yazzie and Toni, but soon observed the same Suzuki Hatchback driving toward his vehicle and then stopping some distance from his vehicle. Because Yazzie had previously threatened to shoot and kill Victim 2, Victim 2 decided to leave the area and avoid being blocked in. When Victim 2 drove toward the Suzuki Hatchback, he observed Yazzie exiting the vehicle. Victim 2 sped up thinking Yazzie had a gun and was going to shoot him. As Victim 2 drove by the Suzuki Hatchback, he saw that Yazzie had a gun and was pointing it at him. Victim 2 believed it was a handgun. Yazzie fired one shot at Victim 2, striking the driver's side door of Victim 2's vehicle, but it did not hit Victim 2. Yazzie then fired several more rounds, but none of them hit Victim 2 or his vehicle. Victim 2 made it to Highway 491 and headed south to his friend's house in Shiprock. Shortly thereafter, Victim 2 met Victim 1 at the Shiprock Police Station to file a police report against Yazzie.

9. On April 16, 2014, affiant and CI Jefferson Joe interviewed Anthony Thomas, aka Tony (Hereinafter referenced as Thomas) regarding the shooting incident involving himself and Yazzie that occurred during the evening of April 12, 2014. Thomas advised that he only knows Yazzie from when he, Thomas,

bought a grinder tool from Yazzie approximately one (1) month ago. Thomas knows Yazzie as "Pete," but does not know Yazzie personally. Thomas advised that sometime during the late afternoon of Saturday, April 12, 2014, Yazzie showed up at Thomas' house trying to sell Thomas some power tools. Thomas did not buy anything because he did not have any money. Yazzie was dropped off at Thomas' house and did not have a vehicle. While at Thomas' house, Yazzie asked to borrow Thomas's cell phone. Yazzie made numerous phone calls and was on Thomas' phone for a long time. Thomas did not know who Yazzie was calling. After a while, Yazzie asked Thomas if he would give Yazzie a ride to a friend's house. As Yazzie was getting inside of Thomas' vehicle (Suzuki Tracker Hatchback bearing New Mexico License Plate Number KLX236), Thomas noticed Yazzie had a gun with him, which Thomas described as a black rifle approximately three (3) feet in length. Yazzie told Thomas it was a .22 (caliber) rifle and that he had recently purchased it, but did not say from where. Soon after Thomas and Yazzie left and were traveling south on Highway 491 past the bridge in Shiprock, Yazzie spotted a Chevy truck driving northbound on Highway 491 and wanted Thomas to follow it. Thomas assumed it was Yazzie's friend who he was going to see. Yazzie kept telling Thomas to follow the vehicle, so he did. When they were on Highway 491 going north toward Cortez, the Chevy truck sped up and Yazzie told Thomas to keep following it. Thomas had no idea who was in the vehicle and Yazzie did not explain why they were following the vehicle. Eventually, the

Chevy truck turned left onto a dirt road and headed west. Yazzie told Thomas to follow him, which he did. As Thomas drove down the dirt road, he noticed the Chevy truck was stopped and facing them, so he pulled over and stopped. The Chevy truck then sped toward them and Thomas thought the truck was going to hit his vehicle but it did not. Yazzie then exited the vehicle and shot at the Chevy truck as it drove by with the .22 rifle he had with him. Thomas was upset at Yazzie and started yelling at him, but then realized Yazzie had a gun and he did not want Yazzie to shoot him so he calmed down. According to Thomas, Yazzie fired four (4) or five (5) rounds at Victim 2. From there, Thomas drove back to his residence with Yazzie. Once at Thomas' house, Yazzie again borrowed Thomas' cell phone to make several calls. Someone eventually came by Thomas' residence and picked Yazzie up, but Thomas did not know who it was or what they were driving.

10. During the interview with Thomas, he gave affiant verbal permission to look at the content on his cell phone to see what numbers Yazzie called Saturday afternoon/evening while at Thomas' residence. Affiant observed on Thomas' phone that Yazzie had called Victim 1's cell phone 22 times, however, the date and time settings on the phone were not accurate for said phone calls, as it indicated November 5, 2014. Thomas could not explain why the phone had the wrong date and time settings. Thomas advised he did not know a lot about his phone or what information was stored on it. Affiant did not recognize any of

the other phone numbers on Thomas's phone.

11. On April 14, 2014, affiant and CI Jefferson Joe conducted a search of the GMC 250 truck registered to Victim 1's father with his consent. Affiant and CI Jefferson Joe observed that the front windshield of the vehicle was damaged and severely cracked, there was a large dent and damage to the driver's side door, and there was a hole almost an inch wide located in the driver's side door. CI Jefferson Joe located a flat piece of metal inside the panel of the driver's side door that appeared to be the remains of a bullet.

12. On Sunday, April 12, 2014, CI Jerrick Curley went to the location of the shooting, which was along a dirt road west of Highway 491, near Shiprock, and located, photographed, and collected five (5) separate gun casings. CI Jerrick Curley also observed and photographed several vehicle tracks and shoe impressions in the dirt.

13. Victim 1, Victim 2, and Yazzie are enrolled on the Navajo Indian Census Roll and the crimes set forth above were committed within the confines of the Navajo Nation Indian Reservation.

14. Based upon the information provided in this affidavit, affiant submits there is probable cause to believe Peterson

Yazzie assaulted Victim 2 on Saturday, April 12, 2014, with a dangerous weapon with intent to do bodily harm, a violation of Title 18, USC, Section 113(a)(3); that Yazzie assaulted Victim 1 and 2 on Thursday, April 10, 2014, with a dangerous weapon (sledgehammer) with intent to do bodily harm, a violation of Title 18, USC, Section 113(a)(3); that Yazzie intended to kill, harass, or place under surveillance with the intent to kill, injure, harass, or intimidate, or cause emotional distress to Victim 1 and 2 between the dates of Thursday, April 10, 2014 and Saturday, April 12, 2014, a violation of Title 18, USC, Section 2261A(2)(A); and that said offenses occurred within Indian Country, to wit the Navajo Nation Indian Reservation, in violation of Title 18, USC, Section 1153. I swear this information to be true and correct to the best of my knowledge.

---------------------------------
Cary Cahoon
Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me on this 18th day of April, 2014.

---------------------------------
United States Magistrate Judge